and we'll hear first Mr. Baier's counsel, Mr. Avery. If for some reason you can't hear us, Ms. Hurd, raise your hand because if you can't hear us and we can't hear you, we'll be lost. Thank you. Good morning, Your Honors, and just to begin, it's Raymond Baier. Baier, thank you. My name is David Avery and I'm with the Missoula Office of the Federal Defenders of Montana. I represent Raymond Baier. In this case, Mr. Baier is asking for a new trial for two reasons. First, in this trial, the prosecutor was allowed to engage in an improper line of cross-examination regarding a related misdemeanor. And second, during closing argument, the prosecutor engaged in inaccurate and inflammatory statements regarding or implying that Mr. Baier had engaged in theft, essentially. I would like to focus on the first of these problems with the court's blessing, and I would like to begin by trying to offer a certain perspective to the issue. Typically, my office, which is myself and John Rhodes, we're, of course, involved with most of our cases from the very beginning. And so when it comes time to appeal, if that time does come, then I tend to be knowledgeable about the potential issues on appeal. And in fact, it helps to identify them and preserve them. In this case, though, we did not inherit the case until after the trial. And so although I knew of what general issues might take place or might be involved, it was a cold transcript to me. And when I get cases like that, those rare cases, I really try to take extra time and careful attention to think about what the jury is experiencing as the trial unfolds, because sometimes they're issues that weren't preserved or issues that are new to me just because it's not my case. And so I want to be especially careful to understand what the jury might be thinking as the evidence comes forth. And so in this case, early on in the excerpt you'll see, pages 15 through 7, there's an in-chambers discussion of whether there's a 404 issue. And there are objections made to the admission of the evidence and testimony related to the prior misdemeanor, which was only in trial a week before that. And the objections were denied and or not ruled on. So I go further into the transcript, and I've got a 404 flag in the back of my head. That's eventually going to play out. But when it does play out, it actually is something much larger and more problematic than a 404B problem. And that's because the government was not simply allowed to establish that there was a prior conviction for what my office believes is not a relevant misdemeanor conviction, but the government was allowed to hijack the jury's esteem for the federal judiciary by eliciting responses to the effect that the magistrate judge had not believed the exact testimony, the exact same story, as the prosecutor put it, that he had told to the magistrate judge just a week before. And that's how the prosecutor did put it. He said, you told this same story, too, didn't you, and then asked essentially whether the magistrate judge had believed him or not. And Mr. Byer, of course, had to say that he was convicted on the misdemeanor. Now, when I got to that point in the testimony, I'm thinking, well, if I'm a juror or the jury having problems with some of the technical difficulties that have already come out in the evidence, such as that relate to the guidelines that aren't written, that aren't promulgated, that have been shared with Mr. Byer regarding renting versus outfitting, regarding where does federal land end and state land begin, those kind of things are difficult questions for a lot of people. And so suddenly I hear, wait, a judge has already not believed this story. So that's going to be the most important thing to a juror at that point, and it might never leave their mind no matter what happens during the rest of the trial. Then address this, because I was under the impression that a number of the hunters testified and that there was an awful lot of evidence that the defendant had lied to the officials and was basically guiding lots of people, maybe 17 or 18, whereas his permit permitted five or whatever. And so if the jury heard all that, how significant is this same story? You know, is this believed? How significant is that in context? Your Honor, your Honor is correct in that there were, first of all, there were two jurors, I mean, sorry, there were two hunters who testified about Mr. Byer, and I think one of the things that might have been most prejudicial to Mr. Byer was one of their recollection that Mr. Byer had asked them to tell Forest Service officials if they come, tell them that this is a rented camp. And one way of looking at that is for Mr. Byer to be asking them to lie to Forest Service officials. Mr. Byer, though, explained that what I said was let's make sure that they understand this is a rental situation. And so, again, it's Mr. Byer's credibility is squarely at issue with respect to what could be some of the most damaging testimony, and it's his version or it's what the hunter believed to be the case was going on. So, again, what is the jury? I thought there was a lot of evidence that he was out there. It wasn't just a rental, that he was guiding them. Well, the rental versus guiding, or it's actually outfitting. The rental versus outfitting distinction is now we know that if you're going to rent to them, then give them everything before they get on Forest Service land, let them take it up there, let them bring it back down, and give it back to you and charge them rent. Can you still guide for them under those circumstances? No. Then you would also be, you would, I think at that point. Rent it to them and leave them alone. Right, exactly. But that's not what Mr. Byer was told at the, you know, prior to. When the season came on and there were fires and he didn't know if he was going to be able to have his livelihood, he asked, can I rent instead of just guide and outfit? And they said yes, and they told him some of what he could and couldn't do. And it was his understanding that they had to go set it up up there, and then he could guide with them as long as he wasn't outfitting them in the sense that he knew it, which was, I mean, doing everything for them, setting it up for them. They just basically fly into Montana and ride out there with them, and they come up and it's the whole shebang. And so if he believed he was following this unwritten handbook policy, then it's not possible that he was actually willfully intending to tell a lie. And that's what the issue is here. He might have been wrong. I mean, he might have been mistaken, and it turns out he was, that he wasn't following the guidelines to achieve. But that's not the issue. The issue is whether he willfully misrepresented whether he was outfitting and guiding. And if he believed that he was. The government didn't introduce this other incident, the conviction, in their case in chief, right? They introduced it after he had testified during the defense case. That's correct, Your Honor. It was a cross-examination. That's correct. And I think that the government probably could have brought in the conviction or it would be a different issue and less problematic if the government had simply established that there was this conviction. Then we'd be dealing with is a misdemeanor conviction for camping in the wrong place relevant and or prejudicial to a false statement. You thought the same story question takes it too far, you think? Oh, exactly. And I think that the relevant cases are the most recent one, which I wrote a 28-J letter to the Court about, United States v. Ortiz. And I'd like to talk about that since the briefs didn't address it. But in that case, we're dealing with a plain error standard of review, so it's different. I think ultimately that is the difference. But the prosecutor uses cross-examination and closing arguments to basically inform the jury or educate the jury, miseducate the jury, that a court will eventually determine whether or not these cooperating witnesses are credible or not. And that's kind of the prosecutor's and the court's job to do that. And so the jury doesn't really need to worry about that. Just listen to their testimony. And so this Court said with respect to both the cross-examination and the closing argument, the vice in both instances is the implication that the court as well as law enforcement can, has, and will monitor the witnesses' truthfulness. Whether the witnesses have testified truthfully, of course, is entirely for the jury to determine. It is improper to communicate that a credibility determination has been made by the Assistant United States Attorney, law enforcement agents, or the court. Do you want to save the remaining time for rebuttal? Thank you, Your Honor. Yes. We'll hear from the United States. Thank you, Your Honors. This is Marcia Hurd on behalf of the United States Attorney's Office for the District of Montana. I appreciate very much your allowing me to appear via video today. I am limited in my travel. I'm currently suffering from a broken pelvis, and so I'm just kind of not able to travel at this point. I also was not involved with the trial of this case below with Mr. Byer, and so it was a cold transcript to me as well. And what struck me about the Crawford 404B material, if you want to call it that, is that the other conviction that Mr. Byer's defense attorney put in was much more devastating had I been a juror looking at credibility. That was an admitted false statement and an explanation that didn't square at all with his abilities and his background in history about the hunting laws in the state of Montana. And it was the same for the cross-examination that followed by the government, approximately 50 pages of cross-examination into every little detail of the story Mr. Byer had told. And to me, that was the part about the trial and the discussions by Mr. Byer and his explanations for what he had done or not done that was extremely devastating to him and would have been very, I think, very probative to the jury about his guilt or innocence in this case. And the one question, or actually two, I guess it was, on excerpts of record, page 325 and 326, that were asked by the prosecutor in that case, do not rise to the level of an abuse of discretion given everything that's in this case. As pointed out in the last discussion, this was not brought in in the prosecution's case in chief. The prosecutor specifically said, you know, it was the same defense attorney in that trial. He's certainly aware of the conviction and aware of the testimony. I may seek to admit it, and I may seek to use some of that sworn testimony, which he would be privy to do if the defendant had told a different story in this trial. But I would certainly give the defense an opportunity. I won't use it in my case in chief. I won't use it today. And the defense could have an opportunity, of course, to object to that. And he followed through with that. And it was only when Mr. Byer had taken the stand, presented his version of the events, that then the discussion about this other conviction came up in the matter of two questions. And the problem, the beginning problem with the 404B argument is that there was absolutely no 404B request. And 404B notice is absolutely not triggered unless a request is made. And I think the record is very clear here that no request was ever made. And so any information that was given by the government to the defense regarding 404B material was gratuitously made and didn't need to be made, could have been admitted without any kind of notice. But the prosecution chose not to do that, chose not to use it in its opening, chose not to use it in its case in chief, and only used it when Mr. Byer took the stand and presented his version of events. The other argument that's being made by the defense in this case is that somehow the admission of the fact of the conviction is so prejudicial because there is an implied, a judge has made a finding that you are not truthful. But that would be true of every single 404B material conviction that was thought to be introduced. Every time there's a conviction that's introduced under 404B, someone, whether it's the court or whether it's a jury, has made that determination. And so that argument could be made with every single conviction. It simply doesn't hold the weight that the defense believes that it does. Well, with every conviction, would there be, like, testimony of the defendant? Because I would think that that wouldn't be applicable in every case. And here it's sort of the you told the same story, right? And it's that element which I don't think is really present in every case where a prior conviction is put in evidence. That's certainly true. I mean, the question was you told the same version of events, that this had been a rental, basically, and not a guided or an outfitted situation. There was the objection, and the objection was there was no advance notice. The court overruled that objection. And then the next question that was asked was told the same story last week, right? And the answer was yes. And then the next question was, and what were the results of the trial? And the defendant not only got to not only answer that he was convicted, but got to put his spin on it, which was the judge in his decision said it was a close call, but he found me guilty. Was there an objection or a motion to strike made based on Rule 403 at that stage? There was not. There was not a motion to strike at the time. There was also no request for limiting instruction that was made from what I can tell from my review of the record. There was a relevancy objection made in chambers, and there was an objection about notice. But then actually at trial, what was articulated was no advance notice. And then that was overruled. The question was asked and answered. And then it was when the prosecutor moved for the admission of the actual judgment, the actual paper judgment. That was objected to as unduly prejudicial, and the judge sustained. The judge agreed on that. Actually, the objection was relevance. And the court said sustained. Oh, actually, I'm sustaining it on a different ground. I'm sustaining it on 403 grounds. And that was at Excerpt of Record, page 325 and 326. But there still wasn't an objection to the prior testimony or a motion to strike it? There was not. And then there is a significant, at least 50 pages of cross-examination that goes absolutely through the entire story that has been told on direct by this defendant as to each one of the three counts, with some devastating information being brought out on cross. And so when the standard in this case for review by this court is abuse of discretion, the United States submits, as we did in the brief, that the two questions that were asked and the limited answer that was given certainly doesn't rise to an abuse of discretion standard, given all the information that came in. Additionally, in this case, the defendant himself put in another conviction, noting, well, I think that the prosecution is going to, so let's just get it out. You were convicted of making false statements on a prior application the year before. And so that information was in front of the jury by the defendants on hand. The defense also claims on appeal that there was prejudicial and inflammatory comments during closing argument that were not supported by the record. And we believe in that case that while the standard is abuse of discretion, generally there was no objection that was made. The comments he's complaining of were made in the prosecution's closing argument, and there was no objection made at the time. And then during the defense's closing argument, he didn't even try to rebut those, didn't comment on them, didn't touch them in any fashion. It was only later that he filed a motion for new trial asking for relief, basically saying that he believed the prosecution was unfairly commenting on the evidence. The district court denied that as being untimely filed and didn't address it on the merits. And so on appeal now they're claiming that there was a statement made that was not supported by the evidence. And I think in this case the inferences that were made were supported by the evidence in this case. And the inference was this man had a permit to have a certain number of people come on to these lands and take money from them. And, in fact, he had a whole number of other people, including people who testified, that came on the land, paid him a significant amount of money. And those people were never claimed. And that certainly supports the inference that he had a motive to do what he did in terms of the false statements. I would assume that I am probably close to being out of time unless you have any additional questions. Thank you. Thank you. Okay. I think you're out of time, but we'll give you, you know, 30 seconds rebuttal here added. I would concede that notice is not a problem because there was no request for that. But that doesn't mean that prejudice is still not at play. And, actually, the district court found prejudice and stopped the line of inquiry. But he found it as to the document showing the conviction. Thank you. If there was no request to strike the testimony and no request for limiting instruction, then it's sort of a plain error thing, right? You're saying it's plain error that the judge didn't say it's prejudicial under Rule 403? No. I just — what our position is, is that I don't think that line of inquiry would have ever gotten in if the district court hadn't reversed its position from in chambers that the conviction was not — was — first he said it wasn't prejudicial in chambers, and then eventually, as it's coming out, he realizes this is prejudicial, and so he stops the line of inquiry. Right. But at the time it was raised in the cross-examination, the only objection was relevance? Or there was no objection at that initially, right? There was only one question. But there was notice on the first question. Correct, Your Honor. And they had given notice. Correct, Your Honor, and we can see that. But you're not really arguing the notice. Not arguing the notice. Are you saying the judge, when there was a notice objection, should have sua sponte, said, well, there's no problem with notice, but it's unduly prejudicial? At that point, Your Honor, there had been no question about whether a judge had — whether the magistrate judge had disbelieved Mr. Beyer. That happened two questions later. Then one question later. And then on the two questions later, was there an objection? Well, the question after that, there was the relevance objection. Right. But on the one that you're saying about what did the judge do, was there an objection? There wasn't. It was one question later. So, again, is that just sua sponte? You think the judge should have stopped? Well, I do think that he should have, but I think at this point the government has not argued that this is a plain error issue, and that's their responsibility to do that. And they've briefed this as if it's an abuse of discretion, and they've also conceded that there's prejudice because they haven't responded to our argument that it wasn't prejudicial. And they've also not raised a harmless error argument either. So the case law in this circuit is that they've waived harmless error. And I would point this Court to another case, Rose. It's cited on a brief, and I think that's the First Circuit. And they will do a sua sponte harmless error review, but they do it if the government has argued prejudice. And this time the government hasn't even argued prejudice, and the district court found prejudice. Thank you. Thank you, Your Honor. The case of United States v. Byer is submitted. The next case for argument is United States v. Antelope. You may proceed. Thank you. Good afternoon. I'm John Rhodes from the Missoula Office of the Federal Defenders of Montana. I represent Larry Antelope. Three times, Larry has been in the position of disclosing his entire sexual history, and he has not been able to do that. What I call the good, the bad, and the ugly.
judges: Brunetti, McKeown, Gould